UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


LEO PAUL CARMONA,

            Petitioner,

v.                                        Case No. 2:08-cv-67
                                        HON. R. ALLAN EDGAR

JEFFREY WOODS,

            Respondent.

_____/


**REPORT AND RECOMMENDATION**

Petitioner Leo Paul Carmona filed this petition for writ of habeas corpus challenging his conviction for second degree murder. Petitioner was sentenced to 25 to 50 years. Petitioner was convicted for his involvement in the death of the 27-month-old son of his girlfriend, Jessica Matson. Petitioner was taking care of Matson's son while she went out with another man. Petitioner could not sleep so he removed the victim from his bed and held him. The victim did not stay still, so petitioner threw the victim to the floor causing his death.

Petitioner filed an appeal of right after his conviction. The Michigan Court of Appeals denied petitioner's appeal, affirming petitioner's conviction on March 1, 2007. The Michigan Supreme Court denied leave to appeal on July 30, 2007. After filing this petition, petitioner moved to stay the proceedings to file a motion for relief from judgment raising unexhausted issues in the state courts. The court granted the stay, and petitioner filed a motion for relief from judgment in the trial court. That motion was denied on March 11, 2011. Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals which was denied on

October 3, 2011.  Petitioner's application for leave to appeal to the Michigan Supreme Court was denied on March 26, 2012.  The stay has now been lifted and petitioner's amended petition is ready for decision.

The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.  In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

The amended petition raises the following issues:

I.  The petitioner was denied of his right to effective assistance of counsel guaranteed him by the Sixth Amendment to the United States Constitution, where his pre-arrest defense counsel erroneously advised him to confess to murder before an autopsy report was prepared, before a police report was filed and before any charges were filed against him based upon the false belief that counsel had secured a plea bargain with the prosecutor.

II.  The petitioner was denied of his due process right to present a defense through the erroneous decision of the trial court on relevant and extrinsic evidence.

A.  The trial court denied defense counsel the opportunity to impeach (Jessica Matson) through the use of prior inconsistent statements.

B.  The petitioner was denied the right to present a defense when the trial court precluded him from introducing evidence to establish bias and motive for fabrication of a crucial prosecution witness.

C.  The petitioner was denied a fair trial based on the trial court's repeated rulings that the evidence presented by defense counsel to show that the prosecution's most critical witness was lying and irrelevant was not harmless error.

III.  The petitioner was denied of his right to effective assistance of counsel guaranteed him by the Sixth Amendment to the United States Constitution, where trial counsel failed to adequately and effectively

- 2 -

explain the importance of having manslaughter instruction given to the jury.

IV.  The prosecutor violated the petitioner's due process rights and punished the exercise of petitioner's constitutional right to trial by moving to amend the charge after petitioner declined to plead guilty to second degree murder.

V.  The trial court violated the petitioner's due process rights by erroneously admitting into evidence the autopsy photographs of the victim's exposed skull, where the danger of unfair prejudice due to the gruesomeness of the photographs after autopsy procedures substantially outweighed any probative value of depicting the victim's skull fracture.

VI.  The petitioner was denied of his right to the effective assistance of counsel guaranteed him by the Sixth Amendment to the United States Constitution where his appellate attorney failed to raise several "obvious and significant" claims of error on his direct appeal of right.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160

F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.*  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 412.  Rather, the application must also be "unreasonable."  *Id.*  Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable.  *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness.  This presumption has always been accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989),

- 4 -

*cert. denied*, 495 U.S. 961 (1990).  Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.  The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner asserts that he received ineffective assistance of counsel when his trial counsel advised him to confess to the murder before charges were filed, an autopsy report was prepared or a police report was prepared in the hope of obtaining a more favorable plea bargain. Petitioner and respondent discussed whether the right to counsel attaches prior to charges being filed and whether a suspect is in custody.  The Michigan Court of Appeals, however, rejected this claim and concluded that petitioner could not show ineffective assistance of counsel even if his right to counsel did attach.  The Michigan Court of Appeals stated:

> Both the Sixth Amendment, US Const Am VI, and Const 1963, art 1, § 20, guarantee a defendant the right to counsel.  After the initiation of adversary judicial criminal proceedings, such as the arraignment, a defendant is entitled to the presence of counsel at "critical" proceedings, including interrogations.  *People v. Frazier*, 270 Mich App 172, 179; 715 NW2d 341, lv gtd 477 Mich 851 (2006), citing *Michigan v Jackson*, 475 US 625, 629-630; 106 S Ct 1404; 89 L Ed 2d 631 (1986) (stating that it is "clear" that a defendant has a right to counsel during post-arraignment custodial interrogation).  The right to counsel under the Sixth Amendment also comprehends the right to the effective assistance of counsel.  *LeBlanc, supra* at 578, quoting *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

> In the instant case, it is undisputed that defendant's March 11, 2004 confession, and the March 18, 2004 interview and reenactment both occurred before any charges were filed against defendant on March 24, 2004.  Thus, defendant's constitutional right to effective assistance of counsel could not have been violated because it had not yet attached.

> However, even if defendant's right to counsel had attached at the time of his confession, his claim of ineffective assistance of counsel would

still fail because defendant has not overcome the presumption that Grewal's decision to advise defendant to confess constituted sound trial strategy. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). A decision whether to encourage a defendant to confess is a strategy decision, and strategic choices made by an attorney about plausible options for a defense are "virtually unchallengeable." *Strickland, supra* at 690-691. Here, the testimony adduced at the *Ginther* hearing shows that Grewal advised defendant to confess with the goal of obtaining a favorable plea bargain. The fact that a particular strategy does not work does not establish ineffective assistance of counsel. *Matuszak, supra* at 61. Therefore, even if defendant's right to counsel had attached at the time of his confession, because he has not overcome the presumption that Grewal's decision to advise defendant to confess constituted sound trial strategy, his ineffective assistance of counsel claim must fail.

(Docket #28 at 1).

Petitioner's counsel explained the events leading up to petitioner's confession and the reason he felt it was in petitioner's best interest to cooperate with the police investigation. At the pretrial suppression hearing petitioner's original trial counsel testified:

> A     As you are indicating right now, you've got to look to the whole or the totality of what was going on. Mr. Carmona's story has changed. Mr. Carmona would be placed in the house alone with the children. There would be an issue with regard to, at least in my opinion, that the prosecutors could argue that since his girlfriend had left with another gentleman over there and he's sitting with the children home alone, X, Y and Z is going to happen. They're going to blame him for becoming a jealous lover type of thing. Put up on the fact that Nate was asked to lie by Jessica.
>
> Add to the fact that when I talked to Mr. Eagen the injuries to the minor child were of such a nature that some sort of blunt force trauma had occurred; either thrown down, hit on the head, something to that extent.
>
> Those things added to the fact of his confession made me sit down with Mr. Carmona and we started discussing which way his case would go. Should we pursue this at trial or should we try to negotiate with the prosecutor right, right now to try to cut you a deal. That's what occurred.

- 6 -

You're trying to have me discount his confession.  His confession was the biggest thing.

Q        A, a confession that they didn't know about.  Correct?  Until you disclosed it with him.

A        Nate --

THE COURT: Until you disclosed it with him?

BY MS. LECKIE:

Q        The prosecution did not know about this, quote, admission --

A        Correct.

Q        -- until you set up an appointment with detectives to have Mr. Carmona repeat that conversation.

A        Correct.  But between our defense strategy that was the biggest thing that happened because now I can't put Mr. Carmona on the stand.  I can't have him testify to something with the possibility of him committing perjury because that may occur and then, then what's going to happen?  A mistrial?

Q        And it may not have occurred and you took away his right to remain silent also.  Correct?

A        No, I didn't take away his right to remain silent.

Q        Well --

A        He voluntarily made that confession.

Q        Okay.  Let me ask you this.  Why wouldn't you wait to have him give a statement to the police until after he was charged?

A        Because my experience has shown that if you negotiate with the prosecutor's office prior to a formal charge coming out you will get a better deal, number one.

Number two, I was trying to avoid -- when I had original conversations with Mr. Eagen it wasn't just manslaughter or second degree murder.  It could have been a first degree murder charge.  We were trying to avoid that.

Q      Okay.  Are you saying that after Mr. Carmona made this alleged admission to you that, did he ever go back and deny it again?

A      He never went back and denied it.

***

A      He's making a confession to the crime.

Q      Okay.  And does that give away any Constitutional right he may have?

A      Sure.

Q      Did you advise him of that?

A      Sure.  I told him as a result of this confession this will be used against you.

Q      And was it your advice to proceed with that confession?

A      It was my advice to proceed with that confession.

Q      And it was, and, and you did that without having any kind of deal, offer, anything.

A      (No audible response)

Q      Yes or no.

A      There was no firm written deal at that time.

(Docket #15 at 70-72, 76).

To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984).  Stated another way, this court is to decide whether

- 8 -

petitioner's trial counsel's alleged failures were such egregious errors as to constitute ineffectiveness

and whether the alleged failures were materially prejudicial.  The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have
> likely undermined the reliability of, and confidence in, the result.
> *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993).  "An error by
> counsel, even if professionally unreasonable, does not warrant setting
> aside the judgment of a criminal proceeding if the error had no effect
> on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in*
> *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495
> U.S. 961 (1990).  In evaluating petitioner's claim, "a court must
> indulge a strong presumption that counsel's conduct falls within the
> wide range of reasonable professional assistance." *Id.* at 689.
> "Counsel is constitutionally ineffective only if performance below
> professional standards caused the defendant to lose what he otherwise
> would probably have won." *United States v. Morrow*, 977 F.2d 222,
> 229 (6th Cir. 1992) (*en banc), cert. denied*, 113 S. Ct. 2969 (1993).
> Thus, the determinative issue is not whether petitioner's counsel was
> ineffective but whether he was so thoroughly ineffective that defeat
> was "snatched from the jaws of victory." *See id.*

*West v. Seabold*, 73 F.3d 81,84 (6th Cir. 1996).  Under the totality of facts, the decision of the

Michigan Court of Appeals was reasonable.  In the opinion of the undersigned, the Michigan Court

of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law as determined by the Supreme Court of the United

States; or result in a decision that was based upon an unreasonable determination of the facts in light

of the evidence presented in the state court proceeding.

Petitioner argues that the court violated his due process rights by denying him the

opportunity to present evidence in support of his defense.  Defendant sought to impeach witness

Jessica Matson through the use of a prior inconsistent statements made in text messages and instant

messages.  The court ruled that during cross-examination, the answer given by the witness on a

collateral matter must be accepted and that extrinsic evidence intended to impeach a witness on a

collateral matter would not be allowed.  Petitioner sought to establish that Jessica Matson in text

messages and instant messages had discussed leaving and killing petitioner. Petitioner further argues

that he should have been able to admit this evidence to show that Jessica Matson was biased against

him. Petitioner argues that he was effectively denied cross-examination of witness Jessica Matson

due to trial court error.

        A federal court may not issue a writ of habeas corpus on the basis of a perceived error

of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982);

*Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). "[S]uch an

inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*,

502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether

the admission of evidence in violation of California state law entitled a petitioner to habeas corpus

relief.

> We have stated many times that "federal habeas corpus relief does not
> lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110
> S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v.
> Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29
> (1984). Today, we reemphasize that it is not the province of a federal
> habeas court to reexamine state-court determinations on state-law
> questions. In conducting habeas review, a federal court is limited to
> deciding whether a conviction violated the Constitution, laws, or
> treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423
> U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

        The appropriate inquiry is whether the allegedly improper admission of evidence

violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court

will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the

denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187

F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578.

In order to justify habeas relief based on the state trial court's error, the petitioner must show that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 1722 (1993); *O'Neal v. McAninch*, 513 U.S. 432 (1995); *Kotteakos v. United States*, 328 U.S. 750, 66 S. Ct. 1239 (1946). The Supreme Court stated "if one cannot say with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected," Kotteakos, 328 U.S. at 750, 66 S. Ct at 1248, and if a judge is in "grave doubt" as to whether a constitutional error had a substantial effect on a jury, that error is not harmless and the petitioner must win. *O'Neal*, 115 S. Ct. at 995. Under *Brecht*, petitioner must show that the trial error resulted in actual prejudice. In the opinion of the undersigned, petitioner cannot show that either the trial court erred in these evidentiary rulings or that he was prejudiced by the court's rulings.

Moreover, petitioner procedurally defaulted these claims in the state courts. The trial court denied these claims under MCR 6.503(D)(3) when presented for the first time in petitioner's motion for relief from judgment. The trial court concluded that petitioner failed to show cause and prejudice to overcome the procedural default. Under MCR 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised on direct appeal. For claims that could have been raised, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds

- 11 -

on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." MCR 6.508(D)(3)(a)-(b).  In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence.  *Luberda v. Trippett*, 211 F.3d 1104, 1006-1007 (6th Cir. 2000). Because MCR 6.508(D) was enacted in 1989 and petitioner's conviction and appeals took place some time thereafter, MCR 6.508(D) was a "firmly established" procedural rule for purposes of petitioner's action.  *See  Luberda*, 211 F.3d at 1007; *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998).  For the reasons stated by the trial court (Docket #65), it is recommended that the court find that petitioner procedurally defaulted these issues.

Petitioner argues that he was denied effective assistance of counsel due to his trial counsel's failure to effectively explain to petitioner the importance of having a manslaughter instruction given to the jury.  However, petitioner clearly indicated at trial that he was not requesting a manslaughter charge to the jury.

> EAGEN [PROSECUTOR]:   I guess that, just for the purpose of the record, Your Honor, as far as any lesser includeds in this case, I did not ask for a manslaughter and Ms. Leckie and the defendant are not asking for it.  And I just want to make sure that the court inquires of the defendant that he is not asking for the manslaughter lesser.

> THE COURT:   Ms. Leckie.  We did discuss that in chambers.

> MS. LECKIE [DEFENSE COUNSEL]:   We discussed it, Your Honor, and my client originally said he would like something like that but he wrote me a note yesterday, which I still have, that says he does not want a lesser included.  I asked him this morning and he said, he repeated that, and if the court would inquire of him if that is his desire.

THE COURT:    Mr. Carmona, is that correct?

MR. CARMONA:      Yes, it is.

THE COURT:    So the jury will have a choice between three boxes, not guilty, guilty of first degree murder, guilty of second degree murder.  Correct?

MR. CARMONA:      Yes.

(Docket #25 at 5-6).  Moreover, petitioner failed to present this claim in his motion for relief from judgment and first presented the claim on appeal to the Michigan Court of Appeals.  It appears that petitioner procedurally defaulted this claim and could not overcome his procedural default since it is his own fault that he failed to timely present the claim.  Further, in *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court held that a death sentence was unconstitutional where the jury was never instructed on a lesser included noncapital offense where the evidence supported such a verdict.  The Court concluded:

> While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard. That safeguard would seem to be especially important in a case such as this.  For when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense -- but leaves some doubt with respect to an element that would justify conviction of a capital offense -- the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.
>
> Such a risk cannot be tolerated in a case in which the defendant's life is at stake.   As we have often stated there is a significant constitutional difference between the death penalty and lesser punishments.

*Id.* at 637.  The Supreme Court left open the question whether the Due Process Clause is violated when a lesser included offense is omitted from jury consideration in a noncapital case.  *Id.* at 638

n. 14.  In the opinion of the undersigned, petitioner cannot show that his rights were violated on this issue, because he cannot show that the state court's ruling was an unreasonable application of United States Supreme Court precedent.

Petitioner claims that his due process rights were violated when the prosecutor amended the information from second degree murder to open murder after petitioner refused to plead guilty to the original charge.  Petitioner first raised this claim in the Michigan Court of Appeals when appealing the denial of his motion for relief from judgment.  Accordingly, it appears that petitioner procedurally defaulted this claim and only has himself to blame for failing to raise this issue in a timely manner.  Moreover, petitioner simply cannot show prosecutorial misconduct.

For an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his protected statutory or constitutional rights is "'patently unconstitutional.'"  *United States v. Goodwin*, 457 U.S. 368, 372 n. 4 (1982) (*quoting Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)) (internal quotations omitted); *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991) ("A prosecutor vindictively prosecutes a person when he or she acts to deter the exercise of a protected right by the person prosecuted.") (citing *United States v. Andrews*, 633 F.2d 449, 453-55 (6th Cir. 1980)).  Thus, a criminal prosecution which would not have been initiated but for vindictiveness is constitutionally prohibited.  *United States v. Adams*, 870 F.2d 1140, 1145 (6th Cir. 1989) (*quoting Blackledge v. Perry*, 417 U.S. 21, 27-28 (1974)).  "The broad discretion accorded prosecutors in deciding whom to prosecute is not 'unfettered,' and a decision to prosecute may not be deliberately based upon the exercise of protected statutory rights."  *Adams*, 870 F.2d at 1145 (citations omitted); *United States v. Andrews*, 633 F.2d 449, 453 (6th Cir. 1980) (en banc) (stating that a court must reconcile the rule that a prosecutor has broad discretion to file charges where there is probable cause with the rule that vindictive conduct by prosecutors is unacceptable and requires

- 14 -

control).  In the opinion of the undersigned, petitioner has not supported this claim or overcome his procedural default of this issue.

Petitioner asserts that photographs of the victim's skull were prejudicially admitted into evidence at trial violating petitioner's right to a fair trial.  Petitioner first presented this issue when he appealed the denial of his motion for relief from judgment to the Michigan Court of Appeals.  Petitioner procedurally defaulted this issue and only has himself to blame for failing to present the issue in a timely manner.  Moreover, the claim lacks merit as evidentiary matters are a matter of state law.  It was within the discretion of the trial court to allow admit the photographs into evidence and the photographs supported the testimony and evidence presented at trial.  A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988).  Therefore, it appears that this portion of petitioner's argument should be dismissed.

Finally, petitioner asserts that his appellate counsel was ineffective for failing to raise these important and obvious issues on appeal.  The trial court rejected this claim stating:

> Defendant claims that his appellate counsel failed to raise several "significant" and "obvious" issues on Defendant's appeal of right, including several of the arguments Defendant now advances in this motion.  However, the number and nature of issues previously raised in the Court of Appeals undercuts Defendant's claim of ineffective assistance of appellate counsel.
>
> In this case, the representation provided to Defendant was reasonable under prevailing professional norms.  The brief of Defendant's appellate counsel to the Michigan Court of Appeals presented a 43-page argument on the four issues counsel apparently deemed most likely to succeed.  Also, as discussed below, despite Defendant's assertion otherwise, his appellate counsel's [sic] did not omit any "dead-bang winners" on Defendant's appeal of right.  Therefore, Defendant's ineffective assistance of appellate counsel claim lacks

- 15 -

> merit, and this claim cannot serve as the basis to fulfill the "good
> cause" requirement of MCR 6508(D)(3)(a).

(Docket #65 at 6).  In the opinion of the undersigned, the Michigan courts' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could

- 16 -

not find that a dismissal of each of petitioner's claims was debatable or wrong.  Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   October 23, 2012